IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR BELLOCCHIO and CARMELITA BELLOCCHIO, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 13-6244 (JBS/JS) |
| v. | |
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Arthur Bellocchio, Pro Se
Carmelita Bellocchio, Pro Se
225 Ramblewood Parkway
Mount Laurel, NJ 08054

Alison Melani Reynolds, DAG
State of New Jersey
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
    Attorney for Defendant New Jersey Department of
    Environmental Protection

Bruce D. Ettman, Esq.
Gage Andretta, Esq.
WOLFF & SAMSON, PC
One Boland Drive
West Orange, NJ 07052
    Attorneys for Defendant New Jersey Turnpike

Jonathan P. Rardin, Esq.
ARCHER & GREINER PC
One Liberty Place
32nd Floor
1650 Market Street
Philadelphia, PA 19103
    Attorney for Defendant Philadelphia Airport

David Vincent Bober, AUSA
Office of the U.S. Attorney
District of New Jersey
402 East State Street
Room 430
Trenton, NJ 08608
        Attorney for Defendant Federal Aviation Administration

Timothy M. Prime, Esq.
307 Fellowship Road
Suite 207
Mount Laurel, NJ 08054
        Attorney for Defendant Township of Mount Laurel

Anthony T. Drollas, Jr., Esq.
CAPEHART & SCATCHARD, P.A.
142 West State Street
Trenton, NJ 08608
        -and-
Gerald Kaplan, Esq.
METHFESSEL & WERBEL, ESQS.
3 Ethel Road
Suite 300
P.O. Box 3012
Edison, NJ 08818
        Attorneys for Defendant Mount Laurel Municipal Utility
        Authority[1]

Thomas J. Coleman, Esq.
RAYMOND COLEMAN & HEINOLD, LLP
325 New Albany Road
Moorestown, NJ 08057
        Attorney for Defendant Delaware Valley Regional Planning
        Commission


**SIMANDLE,** Chief Judge:

---

[1] After briefing on Defendant Mount Laurel Municipal Utility's
motion to dismiss was complete, Gerald Kaplan, Esq. was
substituted as defense counsel.

## I.    INTRODUCTION

This matter comes before the Court on seven motions to dismiss.[2] Plaintiffs, Arthur and Carmelita Bellocchio, are proceeding pro se and bring this action against various federal, state, and local entities for damages arising primarily from noise and air pollution associated with the New Jersey Turnpike and the Philadelphia International Airport.

Because each defendant raises unique grounds for dismissal, the Court will address each separately. The Court is not unsympathetic to Plaintiffs' complaints of noise and air pollution, nor does the Court doubt the alleged impact on their lives, but there is no legal basis on which these defendants may be held liable based on the allegations in Plaintiffs' Complaint. For the reasons discussed below, the Court will grant the FAA's motion to dismiss with prejudice and the remaining Defendants' motions to dismiss without prejudice.

## II.   BACKGROUND

### A. Factual Background

---

[2] Defendant Township of Mount Laurel filed a motion to dismiss on October 28, 2013. [Docket Item 11.] Relying on Fed. R. Civ. P. 15(a)(1)(A), Defendant filed an "amended" motion to dismiss on November 18, 2013. [Docket Item 28.] Because Rule 15(a)(1)(A) regarding amendment of pleadings is inapplicable, Plaintiffs have not filed an amended complaint, and the Court did not grant Defendant leave to file an "amended" motion, the Court will only consider Defendant Township of Mount Laurel's first motion to dismiss. [Docket Item 11.]

The Court accepts the following facts alleged in Plaintiffs' 80-page Complaint as true for the purpose of the instant motions to dismiss. Plaintiffs have resided at 225 Ramblewood Parkway, Mount Laurel, New Jersey, for more than 26 years. (Compl. [Docket Item 1-2] at 55.)[3] Their home is located approximately 300 feet from the New Jersey Turnpike ("the Turnpike") and 16 miles from the Philadelphia International Airport ("PHL"). (Id. at 59, 67.) Plaintiffs complain of noise emanating from vehicles on the Turnpike and planes arriving to and departing from PHL. Plaintiffs' Complaint contains repeated allegations that noise levels around their home have diminished their quality of life, adversely affected their health, and reduced the value of their home. Although Plaintiffs' alleged damages result from the cumulative impact of various actions by defendants, Plaintiffs' Complaint contains specific allegations as to each, which the Court interprets as follows.

### 1. Federal Aviation Administration

Plaintiffs allege that the Federal Aviation Administration ("FAA") violated the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. ("NEPA") through its role in approving projects at PHL, including the Philadelphia International

---

[3] Citations to Plaintiffs' Complaint refer to the page number assigned by the electronic docketing system because Plaintiffs failed to include page numbers or separately number the paragraphs in their Complaint.

Airport Runway 17-35 Improvements Project ("Runway 17-35
Project"), the New York/New Jersey/Philadelphia Airspace
Redesign ("Airspace Redesign Project"), and the Philadelphia
Airport Capacity Enhancement Program ("Capacity Enhancement
Program"). (Id. at 66-76.) Plaintiffs also allege that the
Philadelphia International Airport Noise Exposure Map failed to
include their home and "there was no mention that Mt. Laurel was
going to be affected by these projects." (Id. at 76-77.) Because
Plaintiffs' Complaint provides little detail about these
projects and because they are matters of public record, the
Court has considered the FAA's environmental impact statements
and records of decision related to the projects.

### 2. Philadelphia Airport

Plaintiffs' allegations against the Philadelphia Airport
substantially overlap with those against the FAA. Plaintiffs
complain of noise related to flights arriving to and departing
from PHL following implementation of the Runway 17-35 Project,
the Airspace Redesign Project, and the Capacity Enhancement
Program. (Id. at 23-52.) Plaintiffs allege that the Philadelphia
Airport neglected to comply with NEPA and failed to assess the
impact the projects would have on their home. (Id. at 23.)
Further, Plaintiffs allege that the Philadelphia Airport failed
to assess the correct decibel levels for their area during the
planning process, neglected to follow noise mitigation policies,

neglected to inform Plaintiffs that they would be impacted by the projects, and neglected to perform environmental studies in their area during the planning process. (Id.)

### 3. New Jersey Turnpike Authority

Plaintiffs allege that the New Jersey Turnpike Authority ("NJTA") engaged in "deforestation" along the "south bound side of Gathers Drive and the north bound side along Ramblewood Parkway" in violation of the New Jersey No Net Loss Act." (Id. at 8.) "The removal of trees that were used as the natural barrier between the residents and the highway escalated the noise pollution and affected [Plaintiffs'] air quality." (Id. at 8.) Plaintiffs allege that the NJTA removed the trees without notice or opportunity to comment and without environmental studies being performed to evaluate the impact on the community. (Id. at 9.) As a result, "lights from the warehouses now shine in the windows of the homes across the highway" and "trucks and vehicles travelling this highway can be seen 24 hours a day." (Id. at 10.) Plaintiffs allege that "NJ Turnpike documents show that in 1992 the decibel levels in Ramblewood were 70 decibels when a dense forest did exist. In May 2012 and November 2012 the Burlington County Board of Health performed two unofficial sound readings in our area showing decibel levels . . . between the ranges of 68-75 under minimum conditions." (Id.) Next, Plaintiffs allege that Mount Laurel was on the "priority list in

6

line for a wall barrier" in 1992, but the wall was never erected. (Id.) Further, Plaintiffs allege that in the spring of 2013, without an opportunity to comment or consideration of community impact, "a large sign was erected on the southbound side along Gathers Drive where the deforestation occurred," which is visible from Plaintiffs' home in the early spring, fall, and winter. (Id.) As a result of the noise and light from the Turnpike, Plaintiffs are unable to open the windows in their home and suffer from sleep deprivation, stress, tinnitus, hearing loss. (Id. at 13-14.)

### 4. Delaware Valley Regional Planning Commission

The Court is unable to identify any specific allegations against the Delaware Valley Regional Planning Commission ("DVRPC"). Plaintiffs' Complaint states generally that "[a]ll of these issues were address [sic] at two of the Delaware Valley Regional Planning Commissioners Monthly meetings and one aviation meeting," and "[t]he DVRPC has neglected to provide accurate information during the planning projects that would impact residents and residential communities."[4] (Id. at 81, 52.)

---

[4] In their Complaint, Plaintiffs repeatedly allege:
   The DVRPC has neglected to provide accurate and up to date information on their website that is used for major project [sic]. The DVRPC has neglected to provide accurate information during planning projects that would impact residents and residential communities. The DVRPC has neglected to bring together participation from the nine metropolitan areas to ensure future transportation is not

7

Further, Plaintiffs allege that "Mr. Roger Moog, Manager, Office of Aviation Planning at the Delaware Valley Regional Planning Commission participated as a member of the Philadelphia International Airport Master Plan Technical Advisory Committee during the planning Process of the Air Capacity Enhancement Program." (Id.)

### 5. Mount Laurel Municipal Utilities Authority

Plaintiffs allege that in February 2010 the Mount Laurel Municipal Utilities Authority ("MUA") constructed "a solar farm at 200 1/2 Ramblewood Parkway." (Id. at 60.) Not all residents received notice of the project, although "[i]ndividual meetings were held with the residents that reside along the solar farm area." (Id. at 61.) As part of the project, "two acres of trees were removed along turnpike property, surrounding MUA property and within Turnpike property," including "19 very large trees" that "contributed to the natural tree line that protected the

---

affecting the environment or communities affected by transportation. Neglected to ensure environmental justice to the residents that are affected by noise and air pollution. The DVRPC has neglected to review airport projects to ensure that environment and communities are not affected by transportation. The DVRPC neglected to realize the affected [sic] this situation has on our health, our hearing, our jobs, our sleep, our quality of life and the value of our homes. The DVRPC contributed to violating our civil rights to live in peace and in a healthy environment and the freedom to move freely in and around our home as we wish to choose.
(Id. at 52.)

residents." (Id.) No environmental studies were performed prior
to the tree removal. (Id.)

### 6. New Jersey Department of Environmental Protection

Plaintiffs allege that the New Jersey Department of
Environmental Protection ("NJDEP") "reviewed the Mt. Laurel
Solar Farm Project in accordance with the NJAC 7:22-10 based on
planning information submitted" and approved funding for the
solar project without consideration of community and
environmental impact. (Id. at 63.) 94 trees "were removed for
the solar farm project" and "NJ DEP Forestry was never notified
of this tree removal." (Id.) Further, the NJDEP "visited the
site and confirmed that the trees planted were the incorrect
size" and many that had died were not replanted until 2012. (Id.
at 64.)

### 7. Township of Mount Laurel

Plaintiffs' allegations against the Township of Mount
Laurel ("the Township") include generalized complaints of noise
and air pollution from the Turnpike and PHL. Additionally,
Plaintiffs state that "Mt. Laurel Township has been aware of the
conditions in our area and our Township has not practiced good
land use and has approved projects knowing that our area would
be impacted by these project [sic]."[5] (Id. at 22.) Plaintiffs

---

[5] In their Complaint, Plaintiffs repeatedly allege:

note that a petition signed by 87 residents was submitted to address concerns regarding the Turnpike, but no update has been provided. Further, Plaintiffs allege that Ramblewood Parkway has not been repaved in over 25 years, contributing to "escalated ambient noise levels in [the] area," and Mount Laurel did not follow zoning regulations in the construction of the solar farm on Ramblewood Parkway. (Id. at 23.)

### 8. Damages

Plaintiffs note that they have "tried for over one and a half years to address these issues" with the NJTA and over eight months with the Philadelphia Airport and FAA. (Id. at 53.) Plaintiffs seek punitive damages of $341,000, as well as compensatory damages exceeding $300,000. Plaintiffs also request that Ms. Bellocchio's salary be paid in full if she becomes unemployed due to illness.

### B. Procedural Background

The Mt. Laurel Township has neglected to follow good land use. The Mt. Laurel Township has neglected to take the necessary steps to ensure that the value of the home in our area would be protected from growth around a major highway and ensuring the necessary steps are taken to protect any environmental impact on our lives, our health, our hearing, our quality of life and the value of our homes and investments. The Township has neglected to ensure our zoning regulations were followed that were put in place to protect the residents and our community. The Mt. Laurel [sic] has contributed to violating our civil rights to live in peace and in a healthy environment and the freedom to move freely in and around our home as we wish to choose.

Id. at 22.

Plaintiffs filed a civil action in the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2234-13, on September 12, 2013, against seven named defendants: the New Jersey Department of Environmental Protection, the New Jersey Turnpike, the Philadelphia Airport, the Federal Aviation Administration, the Township of Mount Laurel, the Mount Laurel Municipal Utility Authority, and the Delaware Valley Regional Planning Commission.[6] The case was removed by Defendant Philadelphia Airport pursuant to 28 U.S.C. § 1441(b) on October 21, 2013. [Docket Item 1.] Defendant FAA also filed a notice of removal on November 4, 2013 pursuant to 28 U.S.C. § 1442(a)(1).[7] Defendants then filed the seven motions to dismiss pending before the Court.

**III. STANDARD OF REVIEW**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff failed to set

---

[6] Plaintiffs also named three fictitious defendants.
[7] The FAA's notice of removal resulted in an identically captioned case in this district docketed as Civil Number 13-6714 and assigned to the undersigned. The FAA and MUA are the only defendants to enter appearances in that action. The FAA and MUA filed identical motions to dismiss in both actions. Because the Philadelphia Airport had already filed a notice of removal, the opening of a separate civil action on the Court's docket was error. Therefore, the Court will enter an order administratively terminating the action docketed as Civil Number 13-6714.

11

forth fair notice of what the claim is and the grounds upon
which it rests that make such a claim plausible on its face.
Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Although a
court must accept as true all factual allegations in a
complaint, that tenet is "inapplicable to legal conclusions,"
and "[a] pleading that offers labels and conclusions or a
formulaic recitation of the elements of a cause of action will
not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
"Generally, in ruling on a motion to dismiss, a district court
relies [only] on the complaint, attached exhibits, and matters
of public record." Sands v. McCormick, 502 F.3d 263, 268 (3d
Cir. 2007) (citation omitted).[8]

When evaluating a motion to dismiss under Rule 12(b)(6),
"[w]here the plaintiff is a pro se litigant, the court has an
obligation to construe the complaint liberally." Giles v.
Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (citing Haines v.
Kerner, 404 U.S. 519, 520–521 (1972)). The Court will,
therefore, construe facts alleged, wherever possible, in a
manner favorable to Plaintiffs, but even so, the Complaint must

---

[8] The Court will not consider the more than 400 pages of
documents attached to Plaintiffs' Complaint because Plaintiffs
have not provided specific citation to any of these documents.
Therefore, the Court is unable to determine which, if any, of
these documents are "*integral to or explicitly relied* upon in
the complaint[.]" In re Burlington Coat Factory Sec. Litig., 114
F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (emphasis in
original).

allege sufficient facts from which a plausible claim to relief can be shown.

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) which is filed prior to answering the complaint is considered a "facial challenge" to the court's subject matter jurisdiction. Cardio-Med. Assocs. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d Cir. 1983). This is distinct from a factual attack on the court's subject matter jurisdiction which can only occur after the answer has been served. Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In deciding a Rule 12(b)(1) motion to dismiss which is filed prior to an answer, the court must "review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994).

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of plaintiff, even after Twombly. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293

13

F.3d 103, 110–111 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 117 (3d Cir. 2000).

IV.  **DISCUSSION**

    **A. Federal Aviation Administration's Motion to Dismiss**

    The FAA filed a motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6). [Docket Item 38.] The FAA argues that the Court lacks subject matter jurisdiction over Plaintiffs' claims because the courts of appeal have exclusive jurisdiction to review final orders of the FAA and, even if this Court had subject matter jurisdiction, Plaintiffs' claims would be time-barred. Further, the FAA contends that Plaintiffs are not entitled to the damages they seek because there is no private right of action for monetary relief under NEPA.[9] Finally, the FAA argues that the Court lacks subject matter jurisdiction over any takings claim Plaintiffs might assert. Plaintiffs oppose the FAA's motion, but fail to address the legal arguments therein.[10]

---

[9] There is no private right of action for monetary damages under NEPA, so Plaintiffs must proceed under the Administrative Procedure Act. See <u>Cnty. of Monmouth v. Fed. Emergency Mgmt. Agency</u>, Civ. 09-769 (JAP), 2009 WL 3151331, at *7 (D.N.J. Sept. 24, 2009) (citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 882 (1990)).

[10] The authority cited by Plaintiffs is inapposite. Plaintiffs refer to: <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167 (2000) (discussing citizen-suit provisions of the Clean Water Act); <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978) (discussing challenge to policies of city department of social services and board of education under 42 U.S.C. § 1983); <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445 (1976) (considering claim that the

For the reasons discussed below, the Court will grant the FAA's motion to dismiss with prejudice.

Plaintiffs allege that the FAA violated NEPA in approving projects at PHL, including the Runway 17-35 Project, the Airspace Redesign Project, and the Capacity Enhancement Program.

49 U.S.C. § 46110(a) provides that persons may challenge final orders of the FAA "in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides."[11] 49 U.S.C. § 46110(a). Courts have interpreted 49

---

Connecticut State Employees Retirement Act discriminated against petitioners on the basis of sex in violation of Title VII); Hernandez v. Texas, 347 U.S. 475, 482 (1954) (reversing murder conviction on grounds that systematic exclusion of persons of Mexican descent from jury violated the Fourteenth Amendment); Bolling v. Sharpe, 347 U.S. 497, 500 (1954) (holding that Fifth Amendment prohibits racial segregation in public schools of the District of Columbia); Chem. Waste Mgmt., Inc. v. U.S.E.P.A., 869 F.2d 1526 (D.C. Cir. 1989) (considering challenge to regulatory provisions established by the Environmental Protection Agency under the Administrative Procedure Act); Rylands v. Fletcher, 1868 WL 9885 (H.L. 1868) (discussing doctrine of abnormally dangerous activities); N.J. Stat. Ann. §§ 59:4-2, 4-3 (establishing liability of public entity for injury caused by dangerous conditions on its property). Without an accurate citation, the Court is unable to consider "Brown v Settlement School District" and "Hallowich v Range Resource."

[11] 49 U.S.C. § 46110(a) provides in pertinent part:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) in whole or in part under this part, part B, . . . may

U.S.C. § 46110 as granting the courts of appeals exclusive jurisdiction to affirm, amend, modify, or set aside orders of the FAA. See Jones v. United States, 625 F.3d 827, 829 (5th Cir. 2010) ("Section 46110(a) of the Federal Aviation Act vests the exclusive jurisdiction over challenges to FAA orders in certain United States Courts of Appeals."); Friends of Richards-Gebaur Airport v. F.A.A., 251 F.3d 1178, 1184 (8th Cir. 2001) ("A court of appeals reviewing a petition for judicial review of an order of the FAA has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order.") (internal citation and quotations omitted). See also Fleming v. U.S. Dep't of Transp., 348 F. App'x 736, 737 (3d Cir. 2009) ("[W]hen the resolution of a plaintiff's claims in federal court requires an examination of the underlying FAA proceedings, the district courts lack subject matter jurisdiction over any such claims.").

Having reviewed the records of decision related to the projects, the Court finds that the decisions Plaintiffs challenge are final orders of the FAA subject to 49 U.S.C. § 46110(a)'s grant of exclusive jurisdiction to the courts of

---

apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.
49 U.S.C. § 46110(a).

appeals.[12] Further, the challenged projects pertain to capacity
enhancement, runway lengthening, and airspace redesign which may
be considered "aviation duties and powers designated to be
carried out by the [FAA] Administrator."[13] 49 U.S.C. § 46110(a).
Additionally, at least one court in this District has held that
the courts of appeals have exclusive jurisdiction over a
challenge to the Airspace Redesign Project. See City of

---

[12] The record of decision approving the Runway 17-35 Project was
issued on April 29, 2005 and states that the decision
"constitutes a final order of the [FAA] Administrator subject to
review by the Courts of Appeals of the United States in
accordance with provisions of 49 U.S.C. Section 46110." Runway
17-35 Project Record of Decision, at 45 (Apr. 2005), available
at
http://www.faa.gov/airports/environmental/records_decision/media
/rod_philadelphia.pdf. The record of decision approving the
Airspace Redesign Project was issued on September 5, 2007 and
states that the decision "constitutes an order of the [FAA]
Administrator which is subject to review by the Courts of Appeal
of the United States in accordance with the provisions of 49
U.S.C. § 46110." Airspace Redesign Project Record of Decision,
at 58 (Sept. 5, 2007), available at
http://www.faa.gov/air_traffic/nas_redesign/regional_guidance/ea
stern_reg/nynjphl_redesign/documentation/media/rod_090507.pdf.
The record of decision approving the Capacity Enhancement
Program was issued on December 30, 2010 and states that the
decision "constitutes a final order of the [FAA] Administrator
subject to review the Courts of Appeals of the United States in
accordance with provisions of 49 U.S.C. Section 46110." Capacity
Enhancement Program Record of Decision, at 66 (Dec. 30, 2010),
available at
http://www.faa.gov/airports/environmental/records_decision/media
/rod_phl_201012.pdf.
[13] Courts of appeals have upheld the FAA's decisions regarding
the Airspace Redesign Project and Capacity Enhancement Program.
See Cnty. of Rockland, N.Y. v. F.A.A., 335 F. App'x 52, 55 (D.C.
Cir. 2009) (rejecting NEPA challenge to the Airspace Redesign
Project); Tinicum Twp., Pa. v. U.S. Dep't of Transp., 685 F.3d
288, 298 (3d Cir. 2012) (rejecting NEPA challenge to the
Capacity Enhancement Program).

Elizabeth v. Blakey, Civ. 07-4240 (SDW), 2007 WL 4415054, at *3 (D.N.J. Dec. 14, 2007) (granting motion to dismiss for lack of subject matter jurisdiction because courts of appeals have exclusive jurisdiction to hear challenge to the Airspace Redesign Project). Because Plaintiffs provide no basis to find the exclusive review provision in 49 U.S.C. § 46110 inapplicable, the Court will grant Defendant FAA's motion to dismiss for lack of subject matter jurisdiction to the extent Plaintiffs' allege that the FAA violated NEPA in approving the projects discussed above.

Plaintiffs also allege that the Philadelphia International Airport Noise Exposure Map failed to include their home. Even if the FAA's determination that certain noise exposure maps complied with applicable federal requirements is a reviewable "order" within the meaning of 49 U.S.C. § 46110, the determination would be subject to the exclusive-review provision of 49 U.S.C. § 46110(a).[14] See 49 U.S.C. § 46110(a) (providing that provision applies to action taken "in whole or in part under this part, part B, or subsection (II) or (s) of section 114").

The Court also notes that, even if the Court had jurisdiction over Plaintiffs' claims, those claims would be

---

[14] Noise exposure maps are governed by 49 U.S.C. § 47501 et seq., which is within Part B of Subtitle VII.

time-barred because a petition to review a final order of the FAA must be filed with the court of appeals "not later than 60 days after the order is issued." 49 U.S.C. § 46110(a). "The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day." Id. Here, Plaintiffs filed their Complaint on September 12, 2013, well beyond the 60-day period expired for the challenged projects and Plaintiffs have not provided any explanation for delay.

To the extent Plaintiffs assert a "takings" claim under the Fifth Amendment because noise from the PHL has diminished the value of their home, the Court lacks subject matter jurisdiction because exclusive jurisdiction over a takings claim against the United States for monetary damages lies with the Court of Federal Claims. See 28 U.S.C. § 1491(a)(1); Carteret Sav. Bank, F.A. v. Office of Thrift Supervision, 963 F.2d 567, 582-84 (3d Cir. 1992); see also Morgan v. United States, 101 Fed. Cl. 145, 158 (Fed. Cl. 2011) ("Pursuant to the Tucker Act, this court has exclusive subject matter jurisdiction over takings claims against the United States seeking more than $10,000 in compensation.").

For the reasons discussed above, the Court will grant Defendant FAA's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, with prejudice.

**B. Philadelphia Airport**

The Philadelphia Airport filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). [Docket Item 27.] First, the Philadelphia Airport argues that it is not an entity that can be sued and the City of Philadelphia should be substituted in its place. Next, the Philadelphia Airport argues that Plaintiffs' claims for violating NEPA must fail, and Plaintiffs have failed to properly plead a violation of procedural or substantive due process. Further, the City of Philadelphia is immune from tort liability under Pennsylvania Political Subdivision Tort Claims Act ("PSTCA").

Plaintiffs filed opposition to Defendant's motion to dismiss, but mostly reiterate the allegations in their Complaint.[15] Principally, Plaintiffs contend that the FAA projects discussed above violate NEPA and Plaintiffs contacted various city officials regarding their noise complaints, but were denied assistance.

---

[15] The authority cited by Plaintiffs is inapposite. Plaintiffs rely on the same cases discussed supra in n.10, as well as the following New Jersey statutes: N.J. Stat. Ann. §§ 59:4-2, 4-3 (establishing liability of public entity for injury caused by dangerous conditions on its property); N.J. Stat. Ann. § 59:9-4 (discussing contributory negligence under the TCA); N.J. Stat. Ann. § 59:9-2 (discussing interest on judgments against public entities and employees under the TCA); N.J. Stat. Ann. § 59:3-14 (explaining that nothing in the TCA will exonerate a public employee from liability if conduct was outside the scope of employment).

The Philadelphia Home Rule Charter states that "the Department [of Commerce] shall itself, or by contract, maintain, improve, repair, and operate City airport facilities and equipment and when authorized by the Council acquire, design and construct additional such facilities." 351 Pa. Code § 4.4-500. Because the Philadelphia Airport is not a legal entity distinct from the City of Philadelphia, the Court will dismiss claims against the Philadelphia Airport as a matter of law and construe Plaintiffs' claims as against the City of Philadelphia.[16]

To the extent Plaintiffs' Complaint alleges that the FAA projects discussed above violate NEPA, the City of Philadelphia is an improper defendant. The City of Philadelphia is not an entity regulated by NEPA, 42 U.S.C. § 4332, and as discussed above, the projects about which Plaintiffs complain were reviewed and approved by the FAA and subject to the exclusive-review provision of 49 U.S.C. § 46110(a). Therefore, the Court will grant Defendant's motion to dismiss for lack of subject

---

[16] 53 Pa. Stat. Ann. § 16257 provides:

> [N]o such department shall be taken to have had, since the passage of the act to which this is a supplement, a separate corporate existence, and hereafter all suits growing out of their transactions, and all claims to be filed for removing nuisances, together with all bonds, contracts and obligations, hereafter to be entered into or received by the said departments, shall be in the name of the city of Philadelphia.

53 Pa. Stat. Ann. § 16257.

matter jurisdiction as to Plaintiffs' claims against the City of Philadelphia under NEPA with prejudice.

Moreover, the Court finds that Plaintiffs' Complaint fails to state a claim under either substantive or procedural due process. The Fourteenth Amendment protects against state deprivations "of life, liberty or property, without due process of law[.]" U.S. Const. amend. XIV § 1. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006). See also Gikas v. Wash. Sch. Dist., 328 F.3d 731, 737 (3d Cir. 2003) (citing Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984)). To have a protected property interest, "a person clearly must have more than an abstract need or desire for it" or "a unilateral expectation of it," but rather must have "a legitimate claim of entitlement to it." Robb, 733 F.2d at 292. Courts look to state law to determine whether an asserted property interest exists. Dee v. Borough of Dunmore, 549 F.3d 225, 229–30 (3d Cir. 2008).

Plaintiffs fail to state a claim for procedural due process. Plaintiffs' complaint repeatedly states that the

22

Philadelphia Airport and the FAA neglected to follow appropriate procedures and failed to consider the impact of the various projects on Plaintiffs' home and the surrounding area. Plaintiffs allege that "[t]he Phl Airport and FAA have violated our civil rights to live in peace and in a healthy environment and the freedom to move freely in and around our home as we wish to choose." (Compl. at 23.) However, Plaintiffs' Complaint contains no references to "procedure" or to "due process," and states only sweeping complaints regarding lack of notice or an opportunity to challenge decisions through adequate channels. Although Plaintiffs allege that noise from the PHL has adversely affected their health, interfered with the use and enjoyment of their property, and diminished the value of their home, Plaintiffs have not identified a protected property interest on which to base a due process violation. The parties have not presented, nor has the Court found, any controlling authority establishing a protected property interest in the use and enjoyment of one's land. Also, the Court is doubtful that diminution of property value based upon a generalized governmental action is a sufficient basis for a substantive due process claim. See Tri-Cnty. Concerned Citizens Ass'n v. Carr, Civ. 98-4184, 2001 WL 1132227, at *3-5 (E.D. Pa. Sept. 18, 2001), aff'd, 47 F. App'x 149 (3d Cir. 2002) (dismissing procedural and substantive due process claims after failing to

23

find a protected property interest in the right to use and enjoy land, the right to be free from common nuisances such as odor, noise, pollution, and the right to not have property value diminished, among others). Further, Plaintiffs' disagreement with the FAA's decisions "has no bearing on Plaintiff[s]'s due process rights." Currier v. Keisler, Civ. 08-3217 (WJM), 2008 WL 2705009, at *3 (D.N.J. July 8, 2008). As such, Plaintiffs have not pleaded a controlling property right recognized by state law, and consequently their Complaint fails to state a procedural due process claim.

"To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1292 (3d Cir. 1993). The "core of the concept" of due process is "the protection against arbitrary action." County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998). It is well-settled that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Id. at 846 (citing Collins v. Harker Heights, 503 U.S. 115, 129 (1992)); DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189 (1989). And, substantive due process is violated by executive action only when it "can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." Collins, 503 U.S. at 128.

Even if the Court were to identify a protected property interest in Plaintiffs' Complaint, Plaintiffs fail to allege facts which can be characterized as arbitrary or conscience shocking. The records of decision for each of the challenged FAA projects outline the procedures followed including notice and opportunities to comment. Generalized allegations that Plaintiffs' complaints to city officials and officials at the Philadelphia Airport were not resolved to their satisfaction are insufficient to state a claim for a violation of substantive due process. Therefore, Plaintiffs do not state a claim under either substantive or procedural due process.[17]

To the extent Plaintiffs state a tort claim against the City of Philadelphia, the City of Philadelphia is entitled to immunity under the PSTCA. Pennsylvania law at 42 Pa. Cons. Stat. § 8542 discusses the circumstances under which a local agency may be liable:

> A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

---

[17] To the extent Plaintiffs assert claims for procedural or substantive due process violations against other defendants, the same reasoning applies.

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa. Cons. Stat. § 8542. Subsection B identifies the acts by a local agency or its employees that may result in liability. Plaintiffs fail to identify any factual allegations encompassed by the enumerated acts of Subsection B. Nor do Plaintiffs identify any acts of negligence by the City of Philadelphia or its employees. Therefore, to the extent Plaintiffs assert a tort claim against the City of Philadelphia, it is entitled to immunity under the PSTCA based on the allegations in Plaintiffs' Complaint.

In light of the foregoing, the Court will grant the City of Philadelphia's motion to dismiss Plaintiffs' claims for failure to state a claim without prejudice with the exception of Plaintiffs' claim under NEPA which the Court will dismiss with prejudice.

### C. New Jersey Turnpike Authority

Defendant NJTA filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). [Docket Item 22.] The NJTA argues that Plaintiffs lack standing to bring a private cause of action under the New Jersey No Net Loss Act ("NNLA"). The NJTA also argues that Plaintiffs' claims under NEPA must fail because the

act is only applicable to federal agencies and Plaintiffs' tort
claims should be dismissed because the NJTA is immune from suit
under the New Jersey Tort Claims Act ("TCA").[18]

   Plaintiffs oppose the NJTA's motion, but fail to address
the NJTA's legal arguments. Plaintiffs' chief complaint against
the Turnpike involves an alleged violation of the NNLA for
removing trees that provided a natural barrier between their
home and the highway. Plaintiffs contend that the NJTA removed
the trees without notice or opportunity to comment and without
environmental studies being performed to evaluate the impact on

---

[18] The NJTA also argues that Plaintiffs have failed to comply
with the TCA's notice requirements. Plaintiffs' Complaint refers
to a petition signed by 87 residents that was presented to "the
NJ Turnpike along with two decibel readings performed by the
Burlington County Board of Health." (Compl. at 9.) Further,
Plaintiffs allege that during 2012 and 2013 "[m]y husband and I
attended many meetings with the New Jersey Turnpike including
Landscape Les Hergenrother, Engineer Richard Raczynski,
Assistant Director of Maintenance Robert Matthews and Executive
Director Verionque Hakim. Many telephone calls were made and
many letters and emails were written to the NJ Turnpike, State
officials and State Departments including the NJ Department of
Transportation and the US Federal Highway pleading for help to
get noise abatement to bring our decibel levels to the state
minimum . . . and was informed that I would need to work with
the New Jersey Turnpike to resolve this issue." (Id. at 58.) The
Court finds that Plaintiffs' pleadings lack sufficient detail to
establish actual or substantial compliance with the TCA's notice
requirements for causes of action against public entities. See
N.J. Stat. Ann. § 59:8-1 et seq. It is unclear to whom
Plaintiffs' letters and emails were addressed and whether this
correspondence stated Plaintiffs' intent to pursue a claim under
the TCA. See Ingram v. Twp. of Deptford, 911 F. Supp. 2d 289,
296 (D.N.J. 2012) (discussing substantial compliance with TCA
notice requirements). The Court does not decide whether these
efforts satisfy the requirements of substantial compliance with
the pre-suit notice requirements of the TCA.

the community. Plaintiffs also object to the construction of a large road sign without an opportunity to comment or consideration of community impact.

Plaintiffs cannot state a claim for a violation of the NNLA because the NNLA does not authorize a private cause of action. Under the NNLA, each State entity "shall develop, and submit to the Division of Parks and Forestry in the Department of Environmental Protection, a plan for compensatory reforestation for all areas at least one-half acre in size that are owned or maintained by that State entity and are scheduled for deforestation." N.J. Stat. Ann. § 13:1L-14.2. Remedies for violations of the NNLA are statutorily prescribed under N.J.S.A. § 13:1L-23 which provides that "the [Department of Environmental Protection] may institute a civil action in a court of competent jurisdiction for injunctive relief to prohibit and prevent the violation." N.J. Stat. Ann. § 13:1L-23(a). The NNLA does not authorize a private cause of action for alleged violations of the Act. See Miller v. Zoby, 595 A.2d 1104, 1108 (N.J. Super. Ct. App. Div. 1991) (discussing regulatory statutes where the Legislature "expressly conferred private causes of action when it wanted members of the public to have access to the civil

courts for violations of remedial statutes"). Therefore, Plaintiffs cannot state a claim for a violation of the NNLA.[19]

To the extent Plaintiffs assert claims against the NJTA for violating NEPA, these claims must fail because the NJTA is not a federal entity regulated by NEPA. See 42 U.S.C. § 4332.

Moreover, the Court will dismiss any tort claims asserted by Plaintiffs against the NJTA because the NJTA is immune from suit under the TCA, N.J.S.A. § 59:1-1 et seq. Under the TCA, a public entity is not liable for injury except as otherwise provided. N.J. Stat. Ann. § 59:2-1(a). The NJTA is a public entity within the meaning of N.J.S.A. 59:1-3. Nat'l Amusements, Inc. v. New Jersey Tpk. Auth., 619 A.2d 262, 268 (N.J. Super. Ct. Ch. Div. 1992), aff'd, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994). No exception to immunity applies to the allegations in Plaintiffs' Complaint. Importantly, a public entity "is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity." N.J. Stat. Ann. § 59:2-3(a). Further, "[a] public entity is not liable for the exercise of discretion in determining whether to seek or whether to provide

---

[19] Similarly, any claims Plaintiffs may assert against the NJTA for violating the New Jersey Noise Control Act ("NJNCA") must be dismissed because the accompanying regulations expressly exempt noise from public roadways from coverage and the NJNCA does not provide a private cause of action. See N.J.A.C. § 7:29-1.5; N.J. Stat. Ann. § 13:1G-11 (granting enforcement authority to the NJDEP).

the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services" or "the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable." N.J. Stat. Ann. § 59:2-3(c)-(d).

These provisions have been applied to public entities exercising discretion in the maintenance of trees. See Sims v. City of Newark, 581 A.2d 524, 530 (N.J. Super. Ct. Ch. Div. 1990) (finding city immune under the TCA for maintenance of trees bordering streets). Further, public entities are immune from nuisance claims based on actions "approved in advance by the body exercising discretionary authority to give such approval." Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 449 A.2d 472, 483 (N.J. 1982) (internal citation and quotations omitted). See also E. Brunswick Twp. v. Middlesex Cnty. Bd. of Freeholders, 539 A.2d 756, 758 (N.J. Super. Ct. Ch. Div. 1987) (finding immunity applicable to actions implicated in nuisance claim reflecting "basic policymaking decisions which were made at the 'planning' level of the administrative process"). Also, a public employee is not liable for an injury

caused by a misrepresentation. <u>See</u> N.J. Stat. Ann. § 59:3-10. Because Plaintiffs' claims are based on the NJTA's exercise of discretion in removing trees and constructing a road sign, as well as the alleged misrepresentation that Plaintiffs were on a list for consideration of a noise wall barrier, the Court will grant the NJTA's motion to dismiss for failure to state a claim without prejudice. The Court will grant the NJTA's motion to dismiss Plaintiffs' claims for failure to state a claim without prejudice with the exception of Plaintiffs' claims under NEPA, NNLA, and NJNCA which the Court will dismiss with prejudice because no amendment to the Complaint could cure the latter deficiencies.

### D. Delaware Valley Regional Planning Commission

The DVRPC filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). [Docket Item 16.] The DVRPC argues that Plaintiffs fail to state a claim against the DVRPC because the DVRPC has no rule making authority. The DVRPC also contends that this Court lacks subject matter jurisdiction to interpret the interstate compact creating the DVRPC and it is entitled to immunity under the TCA.[20]

---

[20] The DVRPC also argues that Plaintiffs have failed to comply with the notice requirements of the TCA. Plaintiffs allege that "I have attended two meetings and contact [sic] the DVRPC Environmental Justice department and have been denied assistance." (Compl. at 81.) The Court finds Plaintiffs' pleadings insufficient to establish actual or substantial

Plaintiffs filed opposition to the DVRPC's motion that expands upon the factual allegations in their Complaint without addressing the DVRPC's legal arguments.

The DVRPC was created in 1965 through an interstate compact between Pennsylvania and New Jersey to coordinate regional planning in the area including transportation projects. See N.J. Stat. Ann. § 32:27-3. The DVRPC is an advisory agency and implementation authority remains with state and local governments or agencies. See N.J. Stat. Ann. § 32:27-18 ("The commission shall serve as an advisory agency, with actual authority for carrying out planning proposals continuing to rest in the governing bodies of the States and counties.").

Plaintiffs allege generally that the DVRPC participated in the planning of the various FAA projects about which Plaintiffs complain and failed to provide accurate information during the planning processes.

Even if the Court could decipher specific conduct on which Plaintiffs' claims against the DVRPC rest, Plaintiffs' claims fail because the DVRPC is entitled to sovereign immunity based on the allegations in Plaintiffs' Complaint. N.J.S.A. § 32:27-25 provides:

---

compliance with the TCA's notice requirements for causes of action against public entities. See N.J. Stat. Ann. § 59:8-1 et seq.

> The commission, as an instrumentality of the State of New Jersey and the Commonwealth of Pennsylvania exercising a governmental function may not be sued in any court of law or equity and shall be vested with such attribute of sovereign immunity in its transactions within the boundaries of one or the other of the 2 States as shall apply to the respective highway and/or transportation departments thereof and no more.

N.J. Stat. Ann. § 32:27-25. The DVRPC is thus entitled to the same immunity under the TCA as discussed above with regard to the NJTA. The DVRPC may not be liable for injury resulting from its participation in project planning and exercise of discretion in the policymaking decisions identified in Plaintiffs' Complaint. See N.J. Stat. Ann. § 59:2-3(a); Costa v. Josey, 415 A.2d 337, 340 (N.J. 1980) ("N.J.S.A. 59:2-3(a) refers to actual, high-level policymaking decisions involving the balancing of competing considerations . . . . These discretionary determinations likely include such decisions as whether to utilize the Department's resources and expend funds for the maintenance of (a) road; whether to repair the road by patching or resurfacing; (and) what roads should be repaired.") (internal citations and quotations omitted). Therefore, the Court will grant the DVRPC's motion to dismiss for failure to state a claim without prejudice.

### E. Mount Laurel Municipal Utilities Authority

The MUA filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6).[21] [Docket Item 43.] The MUA argues that Plaintiffs' NEPA claims must fail because the MUA is not a federal agency. The MUA also argues that Plaintiffs have failed to state a claim upon which relief may be granted and failed to comply with the notice requirements of the TCA.[22] In opposition, Plaintiffs reiterate the factual allegations in their complaint and argue that the MUA was on notice as to Plaintiffs' claims because they attended two meetings of the MUA board to raise their concerns regarding noise pollution. Plaintiffs also note that they provided the MUA decibel reading documents confirming their complaints.[23]

---

[21] Defendant MUA filed an Answer on November 8, 2013. [Docket Item 19.] On February 4, 2014, the MUA filed the instant motion to dismiss. A motion to dismiss made after an answer is filed is a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(h)(2). The differences between Rules 12(b)(6) and 12(c) are purely procedural and the pleading standards of Rule 12(b)(6) are applied for both. Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

[22] Plaintiffs allege that "[w]e attended several Board of Director meetings requesting help to repair our area and were denied assistance. When this issue was addressed with the Mt. Laurel Municipality Utility Authority they informed us that it is not there [sic] noise and therefore would not help to correct the escalated noise issue that was caused by the removal of these trees." (Compl. at 62.) The Court finds that Plaintiffs' pleadings lack sufficient detail to establish actual or substantial compliance with the TCA's notice requirements for causes of action against public entities. See N.J. Stat. Ann. § 59:8-1 et seq.

[23] The authority cited in Plaintiffs' opposition is inapposite. In addition to the cases discussed supra in n.10, Plaintiffs

Plaintiffs' allegations against the MUA focus on the construction of a solar farm at 200 1/2 Ramblewood Parkway in February 2010. Plaintiffs complain of a lack of notice regarding the solar farm and the removal of two acres of trees "surrounding MUA property and within Turnpike property," including "19 very large trees" that "contributed to the natural tree line that protected the residents." (Compl. at 61.) Plaintiffs allege that no environmental studies were performed prior to the tree removal. (Id.) However, Plaintiffs' Complaint acknowledges that the NJDEP "reviewed the Mt. Laurel Solar Farm Project in accordance with the NJAC 7:22-10 based on planning information submitted" and approved funding for the solar project. (Id. at 63.)

To the extent Plaintiffs assert claims against the MUA for violating NEPA, these claims must fail because the MUA is not an entity regulated by NEPA. See 42 U.S.C. § 4332.

Further, the MUA is a public entity entitled to immunity under the TCA for the discretionary decisions implicated by Plaintiffs' Complaint. See McDade v. Siazon, 32 A.3d 1122, 1129 (N.J. 2011) (discussing plaintiffs' compliance with procedural requirements of the TCA as to claims against the Egg Harbor

_____

rely on N.J. Stat. Ann. §§ 59:4-2, 4-3 (establishing liability of public entity for injury caused by dangerous conditions on its property).

Township Municipal Utility Authority). Importantly, a public entity "is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity." N.J. Stat. Ann. § 59:2-3(a). Further, public entities are immune from nuisance claims based on actions "approved in advance by the body exercising discretionary authority to give such approval." Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 449 A.2d 472, 483 (N.J. 1982) (internal citation and quotations omitted). The MUA's role in constructing the solar farm and removing trees from the property falls within the discretion vested in the MUA. Additionally, Plaintiffs acknowledge that the solar farm project was reviewed and approved by the NJDEP. Therefore, the MUA is immune from tort liability under the TCA for the activities alleged in Plaintiffs' Complaint.

Because Plaintiffs' Complaint identifies no other grounds upon which relief may be granted, the Court will grant the MUA's motion to dismiss for failure to state a claim without prejudice with the exception of Plaintiffs' claims under NEPA which the Court will dismiss with prejudice.

### F. New Jersey Department of Environmental Protection

The NJDEP filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). [Docket Item 23.] The NJDEP's sole argument is that it is entitled to sovereign immunity. Plaintiffs did not file opposition.

Plaintiffs' allegations against the NJDEP emphasize its role in reviewing and approving funding for the Mount Laurel Solar Farm Project without sufficient consideration of community and environmental impact, as well as the removal of 94 trees as part of the solar farm project.

The NJDEP, as a public entity of the State of New Jersey, is entitled to immunity under the Eleventh Amendment and the TCA for the discretionary decisions implicated by Plaintiffs' Complaint. See Lawson v. K2 Sports USA, Civ. 08-6330 (GEB), 2009 WL 995180, at *3 (D.N.J. Apr. 13, 2009) (finding NJDEP protected from suit in federal court pursuant to the Eleventh Amendment); Cummings v. Jackson, Civ. 07-4046 (MLC), 2008 WL 2625223, at *3 (D.N.J. June 30, 2008). Further, Plaintiffs' reference to N.J.A.C. § 7:22-10 is inapposite because these regulations establish the requirements for environmental assessment that apply to state assisted environmental infrastructure facilities under N.J.A.C. §§ 7:22 and 7:22A and N.J.A.C. § 7:22-10.1(a) does not create a private cause of action. Therefore, the Court will grant NJDEP's motion to dismiss for failure to state a claim without prejudice.

### G. Township of Mount Laurel

The Township of Mount Laurel filed a motion to dismiss for failure to state a claim arguing that the conduct which forms the basis of Plaintiffs' Complaint falls within the

discretionary functions of the municipality. [Docket Item 11.] The Township further argues that it does not have jurisdiction over the NJTA, the Philadelphia Airport, or the FAA and cannot be liable for their decisions. Finally, the Township contends that Plaintiffs' claim for punitive damages should be dismissed because the Township's conduct does not rise to the level of egregious conduct necessary for punitive damages.

Plaintiffs' opposition to the Township's motion does not respond to the Township's legal arguments for dismissal.[24]

Plaintiffs' allegations against the Township include generalized complaints of noise and air pollution resulting from the Turnpike and the PHL, as well as complaints that the Township has not practiced good land use in the area. Plaintiffs also allege that Ramblewood Parkway has not been repaved in over 25 years and Mount Laurel did not follow zoning regulations in the construction of the solar farm on Ramblewood Parkway.

Plaintiffs have provided no basis for holding the Township responsible for the alleged noise and air pollution emanating from the Turnpike or the PHL. Further, as discussed above,

---

[24] The authority cited by Plaintiffs is inapposite. Plaintiffs again rely on the cases discussed supra in n.10, as well as the following New Jersey statutes: N.J. Stat. Ann. §§ 59:4-2, 4-3 (establishing liability of public entity for injury caused by dangerous conditions on its property); N.J. Stat. Ann. § 59:9-4 (discussing contributory negligence under the TCA); N.J. Stat. Ann. § 59:9-2 (discussing interest on judgments against public entities and employees under the TCA).

public entities are immune from liability under the TCA for the exercise of their discretionary authority as implicated by the allegations in Plaintiffs' Complaint. See N.J. Stat. Ann. § 59:2-3(a).

As for Plaintiffs' claim that the Township has not repaved Ramblewood Parkway in over 25 years, Plaintiffs do not allege that the Township failed to protect against a dangerous condition. Plaintiffs only argue that the road surface contributes to noise levels near their home. As such, Plaintiffs' fail to state a claim that would remove the Township's conduct from immunity for discretionary acts of public entities under the TCA. See Costa v. Josey, 388 A.2d 1019, 1024 (N.J. Super. Ct. App. Div. 1978), aff'd, 415 A.2d 337 (N.J. 1980) ("[T]he matters of resurfacing, when, where and how, were high-level discretionary decisions falling within the appropriate exclusive jurisdiction of the government to decide.").

While the Court acknowledges that a private citizen may use mandamus to demand performance of a public duty such as enforcement of zoning ordinances, Plaintiffs have not identified any zoning laws the Township violated in constructing the solar farm. See Mullen v. Ippolito Corp., 50 A.3d 673, 684 (N.J. Super. Ct. App. Div. 2012) (discussing prerequisites to seeking mandamus relief to enforce zoning ordinance). Generally, the

enforcement of municipal zoning is a matter for the Superior Court of New Jersey, subject to the requirements for seeking review of the municipality's final action with respect to the zoning code. Here, Plaintiffs give no indication of the provisions of the municipal zoning code that were allegedly violated.

Therefore, the Court will grant the Township's motion to dismiss for failure to state a claim without prejudice.[25]

**V.    CONCLUSION**

Consistent with the foregoing, the Court will grant all pending motions to dismiss. The Court will grant Defendant FAA's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim with prejudice. However, the Court will grant the remaining defendants' motions to dismiss without prejudice with the exception of Plaintiffs' claims under NEPA, NNLA, and NJNCA which the Court will dismiss with prejudice. An accompanying Order will be entered.


**April 15, 2014**                        **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge

---

[25] Further, as the Township notes, Plaintiffs' have pleaded no facts on which a claim for punitive damages may rest.